UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELIO FARINAS WONG,

Petitioner,

v.

UNKNOWN PARTY #1 et al.,

Respondents.

Case No. 1:26-cv-3098

Honorable Paul L. Maloney

# OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] [2]

## Discussion

### I. Procedural History

The habeas petition, originally filed in the United States District Court for the Southern District of Texas, challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.2.) On September 10, 2026, the Southern District of

[1] Petitioner also filed an emergency motion to prevent transfer or deportation pending resolution of habeas corpus petition. (ECF No. 2.) Because this opinion resolves this matter in its entirety, Petitioner's motion (ECF No. 2) is moot.

[2] The Court will dismiss Unknown Party #2, named as Director of the Port Isabel Detention Center, as a Respondent in this matter.

Texas Court ordered Respondents to show cause why the writ of habeas corpus should not be granted. (ECF No. 11.) Respondents filed their response and motion for summary judgment on September 30, 2026. (ECF No. 15.) On October 6, 2026, this case was transferred to this Court in the interest of justice as Petitioner was transferred to the Western District of Michigan and no longer confined in the Southern District of Texas. (ECF No. 17.) Petitioner filed a reply on November 2, 2026. (ECF No. 23.)

## II. Factual Background

Petitioner is a native and citizen of Cuba. (Notice to Appear (NTA), ECF No. 15-2, PageID.59.) On March 24, 2015, Petitioner was paroled into the United States until March 23, 2017. (*Id.*) On January 9, 2017, Petitioner was convicted of possession of marijuana with intent to distribute. (*Id.*) On June 17, 2020, the Department of Homeland Security (DHS) charged Petitioner as subject to removal under §§ 237(a)(2)(A)(ii) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner is an immigrant who was convicted of an offense relating to a controlled substance and for being "an immigrant who, at the time of application for admission, is not in possession of [valid immigration and travel documents]". (*Id.*, PageID.59–62.)

On January 8, 2026, ICE agents encountered and arrested Petitioner. (2026 Form I-213, ECF No. 15-1, PageID.58.)

On March 26, 2026, the Port Isabel Immigration Court ordered Petitioner removed to Cuba. (Removal Order, ECF No. 15-3, PageID.65.) Petitioner filed a timely appeal of that order, which remains pending. (Filing Receipt for Appeal, ECF No. 15-4, PageID.67.)

## III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue

writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV. Analysis

### A. Statutory Basis for Petitioner's Detention

Respondents contend that Petitioner is subject to mandatory detention under the INA. First, with respect to Respondents' claim that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) as an "applicant[] for admission," (Resp., ECF No. 15, PageID.51), based on the facts presented by the parties, and the reasoning of the Sixth Circuit Court of Appeals in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), the Court concludes that § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention.

Second, Respondents claim that, because Petitioner was convicted of possession of marijuana on or about January 9, 2017, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). (Resp., ECF No. 15, PageID.51.) Petitioner challenges the application of § 1226(c). (Reply, ECF No. 23, PageID.6–7.)

To the extent that a noncitizen believes that his detention does not fall within the scope of § 1226(c), he may request a "*Joseph* hearing" in Immigration Court. *See Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999); *see also* 8 C.F.R. § 1003.19(a). At such a hearing, the noncitizen would have the opportunity to "avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Jennings v. Rodriguez*, 583 U.S. 281, 289 n.1 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003)).

If a noncitizen is dissatisfied with a decision of the immigration judge, the noncitizen ordinarily must "file an administrative appeal so that 'the necessity of detention can be reviewed by . . . the [Board of Immigration Appeals] [(]BIA[)].'" *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citation omitted). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Id.*[3]

Here, there is no indication that Petitioner has requested a *Joseph* hearing in Immigration Court, let alone that Petitioner has appealed any adverse decision to the BIA. Therefore, Petitioner has not exhausted his administrative remedies. Petitioner has also not demonstrated grounds for excusing the exhaustion requirement in this case. Accordingly, Petitioner is not entitled to habeas relief on this basis.

**B. Fifth Amendment Due Process Considerations**

Petitioner has been in ICE custody since January 8, 2026. (2026 Form I-213, ECF No. 15-1, PageID.58.) Petitioner argues that, even if his initial detention was mandatory pursuant to the INA, his continued mandatory detention for a prolonged period of time without an individualized bond hearing violates the Fifth Amendment's Due Process Clause. (Pet., ECF No. 1, PageID.1–2; Reply, ECF No. 23, PageID.7.)

---

[3] There are exceptions to this general rule. For example, the United States Court of Appeals for the Sixth Circuit has noted that due process challenges that are not premised on "correctable procedural errors" generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (discussing that "an alien's due process challenge generally does not require exhaustion" because "the BIA lacks authority to review constitutional challenges," but noting that an "alien must raise correctable procedural errors to the BIA"). The parties have not provided the Court with any information that would suggest that an exception applies here.

### 1. As-Applied Challenge Under the Due Process Clause

First, for the same reasons set forth in detail in *Khalil v. Lynch*, No. 1:26-cv-2426, 2026 WL 3268372 (W.D. Mich. Oct. 30, 2026), the Court concludes that a noncitizen detained under the INA's mandatory detention provisions may bring an as-applied challenge under the Due Process Clause to the noncitizen's prolonged detention. Further, because the Court concludes that a noncitizen detained under the INA's mandatory detention provisions may bring an as-applied challenge regarding the noncitizen's prolonged detention, the Court also concludes that, although a noncitizen detained under the INA's mandatory detention provisions is not initially entitled to a bond hearing, the noncitizen's unreasonably prolonged detention under the INA's mandatory detention provisions without a bond hearing can violate the Due Process Clause. Having concluded that unreasonably prolonged detention under the INA's mandatory detention provisions without a bond hearing can violate the Due Process Clause, the Court applies the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether Petitioner's detention has become unreasonably prolonged, and if it has, to determine the process that Petitioner is due.

### 2. Mathews v. Eldridge Balancing Test

The Sixth Circuit has held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*."). Therefore, in determining whether Petitioner's detention has become unreasonable, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or

substitute procedures entail." *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025), *aff'd,* 175 F.4th 713 (6th Cir. 2026) (citing *Mathews*, 424 U.S. at 335); *see also Black*, 103 F.4th at 145–146 (applying *Matthews* to a due process challenge to prolonged mandatory detention).

The first *Mathews* factor weighs in favor of Petitioner. Petitioner has a substantial private interest in being provided with the opportunity to argue for his release at a bond hearing in Immigration Court because one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). Here, Petitioner has been detained since January 8, 2026, far longer from the presumptively unreasonable detention in *Zadvydas*, 533 U.S. at 701, and the expected duration of detention during removal proceedings discussed in *Demore v. Kim*, 538 U.S. 510, 530 (2003). Further, based on the record before this Court, it appears that Petitioner's detention is essentially indefinite at this point because Petitioner's appeal of his removal order to the BIA is currently pending, with no indication of when it will be resolved. Even assuming that Petitioner's appeal is denied, Petitioner is entitled to contest that decision before the Sixth Circuit, which could add months if not years to Petitioner's detention.

Additionally, under this first factor, the Court may consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Here, there is nothing to suggest that the conditions under with Petitioner is held differ from criminal incarceration in any meaningful respect. There can be no doubt that Petitioner is "experiencing [many of] the deprivations of incarceration, including loss of contact

with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 784 F. Supp. 3d at 1187.

The second *Mathews* factor also weighs in Petitioner's favor. Civil immigration detention is "nonpunitive in purpose and effect," and is not justified where a petitioner is not a flight risk or a danger to the community. *Zadvydas*, 533 U.S. at 690. As discussed above, in *Demore*, the Supreme Court noted that § 1226(c) stemmed from Congress' concern with the immigration authorities' "wholesale failure" to "deal with the increasing rates of criminal activity by aliens." 538 U.S. at 518. Section 1226(c) was intended to remedy this perceived problem by ensuring that aliens convicted of certain crimes would be present at their removal proceedings and would not pose a danger to their communities. *Demore,* 538 U.S. at 519 (Kennedy, J., concurring). However, an individualized bond hearing does not guarantee the release; it merely ensures that an immigration judge can assess whether Petitioner continues to pose a flight risk or a danger to the community that cannot be mitigated by conditions on bond, reducing the risk that Petitioner will suffer an "erroneous deprivation" of his rights. *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025) (citation omitted). However, Respondents have not established a significant interest in "detaining someone who [could convince] a neutral adjudicator, following a hearing and assessment of the evidence, that his ongoing detention is not warranted." *See id.* Furthermore, Respondents have not established that an individualized hearing would impose significant "administrative or financial costs" in this case—"[t]o the contrary," Respondents' position "requires the government to continue funding and overseeing [Petitioner's] detention[.]" *See id.*

Therefore, in sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's mandatory detention since January 8, 2026, without an individualized determination as to danger or flight risk violates Petitioner's Fifth Amendment due process rights, and Petitioner is entitled to a bond hearing before the Immigration Court.

**V. Other Claims and Other Forms of Relief**

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

**Conclusion**

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Court will order Respondents to provide Petitioner with a bond hearing within five business days of the date of this Court's opinion and judgment with notice to the Parties as soon as practicable, no later than 24 hours prior to the scheduled hearing, or, in the alternative, immediately release Petitioner from custody.[4] The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the conditions of the bond, or if bond was denied, the reasons for the denial.

Dated: November 6, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge

[4] This Court has adopted a standard practice of requiring such a hearing within five business days, even if the Petitioner requests a deadline that is shorter or longer or only release.